In the Matter of the Probate of the Last Will and Testament of DELIA T. SWEENEY, Deceased.

Surrogate's Court, Bronx County, April, 1923.

**Wills — construction — when subsequent will containing no revocation clause will be harmonized and construed with prior will — life use — power to consume.**

In the interpretation of a will isolated words or sentences should not be considered by themselves but the language of all documents which taken together constitute the will should be considered and all parts of the same, if possible, be given effect.

After testatrix by a written instrument had given all of her property to her sister, both of them sold a parcel of real estate and received as part of the purchase price a bond and mortgage for $5,000 upon the property in which security it is agreed that each of the sisters owned an undivided one-half share. About a year after the execution of the first paper by testatrix she made another will containing no revocation clause but which after referring to the facts as to the sale of the real property declared: "All money, household effects and the $5000. Mortgage bond I desire my sister Mary A. Sweeney to have possession of should she survive me. Should the $5000. Mortgage bond remain intact at her death, I desire that it be disposed of as follows after paying off all Funeral Expenses, Doctor's bills and Church bills: The Bond of $5,000. to Sister M. of the Assumption, Catharine A. O'Brien, Mary J. Kennard, In remembrance of their kindness to me, $25.00 to Mary McCoy. Loretta McDermott. Helen Gonzales, each. The remainder to be divided evenly amongst my remaining nephews and nieces." *Held*, that both of the testamentary papers should be read together.

Testatrix did not intend an absolute bequest of her money, household effects and her interest in the bond and mortgage, to her sister but to give effect to her intention that under certain conditions said property was to vest in other persons, both testamentary papers will be construed to effectuate the following:

1. A bequest of all of the decedent's property other than her money, household effects and her interest in the bond and mortgage, to her sister absolutely.

2. A bequest of her said money, household effects and her interest in said bond and mortgage to her sister, with the right to possess, use, enjoy and dispose of the same during her life, and if not all used or disposed of by her, then

3. Bequests of the interest of decedent in the bond and mortgage to Sister M. of the Assumption, Catharine A. O'Brien and Mary J. Kennard in equal shares, the sum of $25 each out of her money and household effects to Mary McCoy, Loretta McDermott and Helen Gonzales, and the remainder to her nephews and nieces not theretofore mentioned in equal shares.

PROBATE proceeding.

*Edward J. Walsh*, for petitioner.

*Thomas A. McGrath*, for respondent.

SCHULZ, S.   The decedent left two testamentary documents which have been proved as her last will and testament.   By the first, dated March 5, 1921, she gave, devised and bequeathed all of her

property, " both real, personal or mixed of whatsoever description or wheresoever situated," to her sister, Mary Alice Sweeney, " to have and to hold unto herself forever." The other was dated February 23, 1922. It contained no revocation clause and the two instruments must, therefore, be read together. *Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86, 93; *Hard* v. *Ashley*, 117 id. 606, 613.

Between the date of the first of the two papers and that of the second, it appears that the decedent and her said sister sold a parcel of real estate and received a bond secured by a mortgage thereon in the sum of $5,000 as a part of the purchase price, in which bond and mortgage the parties appear to agree that each of the sisters owned an undivided one-half share.

The later document refers to these facts and then proceeds as follows: "All money, household effects and the $5000. Mortgage bond I desire my sister Mary A. Sweeney to have possession of should she survive me. Should the $5000. Mortgage bond remain intact at her death, I desire that it be disposed of as follows after paying off all Funeral Expenses, Doctor's bills and Church bills: The Bond of $5,000. to Sister M. of the Assumption, Catharine A. O'Brien, Mary J. Kennard, In remembrance of their kindness to me, $25.00 to Mary McCoy. Loretta McDermott. Helen Gonzales, each. The remainder to be divided evenly amongst my remaining nephews and nieces."

An answer was filed objecting to the probate of these instruments which contains a request for a construction of the same. The objections having been disposed of, the matter of construction remains to be determined. The earlier document presents no question, but in endeavoring to ascertain the intent of the decedent from the later one, difficulties are encountered.

It is contended that the language " I desire my sister Mary A. Sweeney to have possession of " is sufficient to warrant a finding that the testatrix intended thereby to bequeath to her sister absolutely so much of the property mentioned as belonged to her and, if this is so, that the language which follows such provision did not change or limit such disposition .

Ordinarily it might be urged with some force that when the decedent used the words " I desire " after the provision in favor of her sister, the very words themselves show that it is the expression of a wish only and hence that the provision is simply precatory, but this argument loses weight if it be noted that where she makes the provision for her sister, she likewise uses the words " I desire." From a reading of the paper it is evident that it was not drawn by one familiar with the preparation of wills, and in construing the

same, this fact must be borne in mind. *Eidt* v. *Eidt*, 142 App. Div. 733; revd., 203 N. Y. 325 on other grounds; *Potter* v. *Pike*, 183 N. Y. Supp. 842.

The task confronting a court in construing a will is, of course, to ascertain the intent of the testator (*Matter of Buechner*, 226 N. Y. 440; cases cited in *Matter of Correll*, 88 Misc. Rep. 377), and in doing that, isolated words or sentences should not be considered by themselves, but the language of the whole document or documents which taken together constitute the will, should be considered and all parts of the same, if possible, given effect. *Howland* v. *Clendenin*, 134 N. Y. 304; *Roe* v. *Vingut*, 117 id. 204; cases cited in *Matter of Columbia Trust Co.*, 97 Misc. Rep. 566.

Here we have a case in which the testatrix had by the instrument dated March 5, 1921, in unmistakable terms given all of her property to her sister. If the respondents are correct and she intended by the paper dated February 23, 1922, to do the same thing, the question naturally arises, why did she mention her money, household effects and the mortgage in the second document? The fact that she did mention them, coupled with the provisions which follow, seems to be indicative of an intention on her part in some way to change the absolute bequest of all of her property that she had made to her sister in the prior instrument.

It might be argued that she executed the second paper because the real estate had been sold and she thought that it was necessary, for that reason, to execute another will, but as a matter of law, it was not necessary unless she wished to change or modify the disposition theretofore made, and if any presumption is indulged in, it must be that she knew the law and, therefore, knew that it was not necessary, rather than that she was ignorant of it.

Another contention is that if an absolute bequest was effected by the earlier provision, then there was an attempt to cut it down by the provisions which follow. If this be so, I do not deem it fatal to the conclusion which I reach. There is no prohibition to cutting down or limiting an absolute bequest contained in a testamentary paper by some other provision in it. It is only necessary that the language which attempts to limit such apparent bequest shall show such intent as clearly as did the prior language to make it. *Close* v. *Farmers L. & T. Co.*, 195 N. Y. 92; *Mee* v. *Gordon*, 187 id. 400; *Felter* v. *Ackerson*, 35 App. Div. 282. In the matter before me, neither the language creating the bequest nor that which follows can be said to be clear, but the latter is at least as clear as the former.

To me it appears evident that the decedent by the language used intended that under certain conditions the property men-

tioned was to vest in persons other than her sister, in the manner stated therein. Being satisfied that such was her intention, it should, if possible, be given effect and this can be done if both testamentary documents be construed as effectuating the following: (a) A bequest of all of the decedent's property other than her money, household effects and her interest in the $5,000 bond and mortgage to her sister, Mary A. Sweeney, absolutely; (b) a bequest of her said money, household effects and her interest in the said bond and mortgage to her said sister, with the right to possess, use, enjoy and dispose of the same during her life, and if not all used or disposed of by her, then (c) bequests of her interest in the bond and mortgage to Sister M. of the Assumption, Catharine A. O'Brien and Mary J. Kennard in equal shares, the sum of $25 each out of her money and household effects to Mary McCoy, Loretta McDermott and Helen Gonzales, and the remainder to her nephews and nieces not theretofore mentioned.

I believe the language immediately following the provision in favor of her sister contained in the later instrument, is sufficiently clear to warrant this construction unless the fact that the sister was given the possession, use, enjoyment and power of disposition over the same, prevents the creation of the expectant estates.

By section 11 of the Personal Property Law (Cons. Laws, chap. 41) the rules applicable to real property hereafter referred to and contained in section 57 of the Real Property Law (Cons. Laws, chap. 50) are made applicable to personalty. *Tillman* v. *Ogren*, 227 N. Y. 495, affg. 182 App. Div. 672; motion for reargument denied, 228 N. Y. 559. This section, so far as material, provides that an expectant estate may be defeated in any manner, or by any act or means which the party creating such estate, in the creation thereof, has provided for or authorized. An expectant estate thus liable to be defeated shall not, on that ground, be adjudged void, in its creation. If, therefore, I am correct in concluding that expectant estates were created by the language immediately following the provision in favor of the sister, the mere fact that they could be defeated by the sister by using, enjoying and disposing of the property during her life would not make such estate void in its creation.

In *Tillman* v. *Ogren*, 227 N. Y. 495, 502, the language of the gift was: " I give and bequeath to my beloved husband Lars Erickson, all of the rest and remainder of my estate both real and personal to have and to hold the same to him his heirs and assigns forever," and subsequent language in the will was that Lars Erickson " shall give and turn over to my sister Amanda Tillman " what remained undisposed of by him. And the court there held that there was an

absolute gift and that the language last quoted was not clear and certain enough to qualify such absolute gift. The court, however, stated the law to be that "A gift to one followed by a gift to another of such part thereof as may remain at the decease of the first taker, can be enforced when the intention of the giver is clear and definite to limit the gift to the first taker to a life estate with power to dispose of the principal or any part thereof during his lifetime and to give to another such part of the principal as is not disposed of in the lifetime of the first taker. [Citing *Seaward* v. *Davis*, 198 N. Y. 415.] The gift over after a gift that is apparently absolute is sustained because it is ascertained that it was not the giver's intention to make an absolute gift, but one qualified and limited by the subsequent or other provisions of the will or instrument creating the gifts." Citing *Leggett* v. *Firth*, 132 N. Y. 7.

In *Matter of Ithaca Trust Co.*, 220 N. Y. 437, it was held that a testator's intention to restrict a gift to his mother by making it a life estate, with power of disposition during her life, is not contrary to law.

In *Matter of Gardner*, 140 N. Y. 122, the decedent by the residuary clause of his will gave the residue of his property to his wife " to have and to hold the same and every part and parcel thereof to her and her assigns forever; provided, however, that if any part of it should remain unexpended or undisposed of at her death, what should so remain he gave to his son and his heirs and assigns," and it was held that a condition was annexed to the grant to the effect that if she died leaving any part of the property undisposed of at her death, such part should revert to his son and that as to any portion of the estate to which this proviso might be applicable the precedent estate granted to the wife would be converted into a qualified or base and determinable fee. The language by which the gift was made to decedent's sister in the present case is certainly not as clear and definite as that by which the absolute gifts were made in the cases cited, and it would seem that the conclusion arrived at by me is not contrary to the law as enunciated in these authorities. See, also, *Peck* v. *Smith*, 183 App. Div. 336. I find that it was not the intention of the testatrix to make an absolute bequest of her money, household effects and her interest in the bond and mortgage stated to her sister, Mary A. Sweeney, and construe her will as theretofore set forth.

Costs to the proponent payable out of the estate. Settle decision and decree accordingly.

Decreed accordingly.